## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **WESLEY YOW** | ) | **Case Number** |
|  | ) |  |
| **Plaintiff** | ) |  |
|  | ) |  |
| **vs.** | ) | **CIVIL COMPLAINT** |
|  | ) |  |
| **NIAGRA CREDIT SOLUTIONS, INC.** | ) |  |
|  | ) | **JURY TRIAL DEMANDED** |
| **Defendant** | ) |  |
|  | ) |  |

### COMPLAINT AND JURY DEMAND

**COMES NOW**, Plaintiff, Wesley Yow, by and through his undersigned counsel, Bruce K. Warren, Esquire of Warren & Vullings, LLP, complaining of Defendant, and respectfully avers as follows:

### I.  INTRODUCTORY STATEMENT

1.    Plaintiff, Wesley Yow, is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"),  which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

### II.  JURISDICTION

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

3.     Venue in this District is proper in that the Defendant maintains a principle place of business in this District.

### III.  PARTIES

4.     Plaintiff, Wesley Yow is an adult natural person residing at 44 County Road 196, Iuka, Mississippi 38852.  At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5.     Defendant, Niagra Credit Solutions, Inc. ("Defendant"), at all times relevant hereto, is and was a corporation engaged in the business of collecting debt within the State of Mississippi and New York with a principle place of business located at 420 Lawrence Bell Drive, Suite 2, Williamsville, NY 14221.

6.     Defendant is engaged in the collection of debts from consumers using the telephone and mail.  Defendant regularly attempts to collect consumer debts alleged to be due to another.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV.  FACTUAL ALLEGATIONS

7.     In or around May 2011, Plaintiff began receiving phone calls from Defendant regarding an alleged debt owed to Nissan Motor Acceptance Corp for approximately $11,000.00.

8.     Plaintiff's car was repossessed in 2005 and has not been contacted regarding the aforementioned account until Defendant's May 2011 phone calls.

9.     Defendant contacts Plaintiff on a daily basis and on some occasions, has done so several times in a single day.

10.     Defendant contacts Plaintiff on Plaintiff's cell phone, home phone and once at Plaintiff's place of employment.

11.     Defendant's agent has identified himself as a debt collector calling on behalf of Nissan.

12.     Defendant's agent has attempted to coerce Plaintiff into agreeing to a settlement offer set forth by Defendant by making automatic payments through Plaintiff's bank account.

13.     Plaintiff did not want to give Defendant's agent Plaintiff's personal banking account information since Plaintiff did not know for sure the exact identity of Defendant.

14.     Defendant's agent claimed that Nissan gave Defendant permission to settle the alleged account for $4,000.00 but that in order for Plaintiff to pay the lesser amount, Plaintiff would need to pay in full.

15.      Plaintiff asked Defendant's agent if Plaintiff could make monthly payments on the $4,000.00 settlement and Defendant's agent told Plaintiff that if Plaintiff wanted to make monthly payments Plaintiff could do so in increments of $25.00 but the payments would be applied to the full amount of $11,000.00.

16.     Plaintiff informed Defendant's agent that Plaintiff did not want to make decision at that time since the alleged is approximately six years old and Plaintiff cannot afford to pay the full amount of $4,000.00.

17.     Defendant's agent began to get angry toward Plaintiff, threatening Plaintiff that if Plaintiff did not pay, Defendant would garnish Plaintiff's wages.

18.     Defendant's agent spoke to Plaintiff, as if Plaintiff was a child, belittling Plaintiff asking why Plaintiff could not afford to pay since, according to Plaintiff's credit reports, Plaintiff can afford to have credit cards therefore, Plaintiff could afford to pay the alleged debt.

19.     Plaintiff questioned Defendant's agent on why Defendant pulled Plaintiff's credit reports so often and Defendant's agent told Plaintiff that Defendant can pull Plaintiff's credit reports as many times as Defendant wants.

20.     Defendant's agent told Plaintiff that if Plaintiff cannot pay Defendant then Defendant's agent will have to "get a report going" to have Plaintiff's wages garnished.

21.     Plaintiff has never received anything in writing from Defendant regarding the alleged debt or possible wage garnishment.

22.     On one occasion, Defendant's agent had attempted to contact Plaintiff at Plaintiff's home phone number and since Plaintiff was out of town for work, Plaintiff's mother answered Defendant's call.

23.     Defendant's agent was well aware that he was speaking with Plaintiff's mother but continued to inform Plaintiff's mother that agent was calling in regard to an alleged debt and to whom the alleged debt was owed.

24.     Plaintiff's mother questioned Defendant's agent on why Defendant was attempting to collect an alleged debt from 2005.

25.     Plaintiff was angered by the fact that Defendant's agent divulged personal information to Plaintiff's mother instead of leaving a message for Plaintiff to return Defendant's phone call.

26.     Defendant's agent has also attempted to contact Plaintiff at Plaintiff's place of employment.

27.     Defendant's constant phone calls to Plaintiff's cell phone are nothing less than harassing and disruptive since Plaintiff relies on his cell phone for work while traveling.

28.     On or around May 25, 2011, Plaintiff received another phone call from Defendant at which point Plaintiff had informed Defendant's agent that Plaintiff had hired an attorney.

29.     Defendant's agent was unimpressed and questioned Plaintiff on how Plaintiff could afford to hire an attorney if Plaintiff could not afford to pay Defendant.

30.     Defendant's agent continued to refer to Plaintiff's credit report telling Plaintiff that Plaintiff's credit report shows Plaintiff having available balances on Plaintiff's credit cards which Plaintiff should use to pay Defendant.

31.     Plaintiff again told Defendant's agent that Plaintiff cannot afford to pay Defendant, at which point, Defendant's agent stated that he will be "sending out paperwork for garnishment."

32.     On or around May 26, 2011, Plaintiff received a voice mail from Defendant stating, "Wesley, 'Matt Hammon' calling, I'm sorry it seems as though we got disconnected. Just wanted to make sure I knew where we stood here with the file.  Going to be talking to 'Lynette Crumm' tomorrow, I think she's the person I was told I needed to talk to if you have any questions, feel free to give me a call if you would like to rectify this voluntarily.  I would be more than happy to work with ya but it doesn't seem at this point it is a possibility.  Here until about 8:00 your time, 1-800-381-0416 x219, reference number 2108299.  Thanks."

33.     On the aforementioned date, Plaintiff received a second voice mail from Defendant stating, "Hi Wesley, this is 'Lisa Salvini' contacting you from the settlement claims area of Niagra Credit Solutions.  If you can please return my call, looks like we did receive the fax back, it looks from, she signed on here, it looks like 'Lynette Crumm.'  I need to speak with you regarding this reference, 2108299 just to explain to you where we stand at this point.  If you can give me a call back, I am only in the office until 12:30 pm eastern standard.  Otherwise, you

can reach me back after 8:00 am on Tueday the 31st.  My number here is toll free 800-381-0416 my direct extension is 242.  Thank you."

34.    After retrieving the aforementioned voice mails, Plaintiff contacted 'Lynette Crumm' who is the Personnel Manager at Plaintiff's place of employment.  Plaintiff was informed by 'Lynette Crumm' that she had never faxed anything to Defendant and has certainly not signed anything as Defendant's agent has claimed.

35.    Defendant has been untruthful in its claims to have received signed documentation from Plaintiff's Personnel Manager in an attempt to intimidate Plaintiff into making an immediate payment to avoid Defendant's claims of wage garnishment.

36.    On or around May 31, 2011, Plaintiff received another voicemail from Defendant stating, "This message is for Wesley Yow.  'Matt Hammon' calling.  Um, I don't know if they got that paperwork over to you at Wal-Mart yet.  If you could give me a call back, please.  We can try and work something out voluntarily, I know it is the last day of the month, we're only here for about another fifteen minutes but maybe you'll get this and have a change of heart!  1-800-381-0416 extension 219.  When calling in, refer to reference number 2108299.  Thank you."

36.    Plaintiff has never received a written notice stating Plaintiff's right to be notified of a wage garnishment and an opportunity to be heard, thereby, creating a false sense of urgency that a wage garnishment is imminent.

37.    The Defendant knew or should have known that their actions violated the FDCPA.  Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

38.     At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

39.     At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

40.     As a result of Defendant's conduct, Plaintiffs have sustained actual damages, including, but not limited to, injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and she will continue to suffer same for an indefinite time in the future, all to his great detriment and loss.

## COUNT I – FDCPA

41.     The above paragraphs are hereby incorporated herein by reference.

42.     At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

43.     The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of:

| | |
|---|---|
| §§ 1692b(2): | Contact of Third Party: Stated that consumer owes any debt |
| §§ 1692c(a)(1): | At any unusual time, unusual place, or unusual time |
| | or place known to be inconvenient to the consumer |
| §§ 1692c(a)(2): | After it knows consumer to be represented by an attorney |
| | unless attorney consents or is unresponsive |

§§ 1692c(b):        With anyone except consumer, consumer's attorney, or

                    credit bureau concerning the debt

§§ 1692d:           Any conduct the natural consequence of which is to

                    harass, oppress, or abuse any person

§§ 1692d(2):        Profane language or other abusive language

§§ 1692d(5):        Caused the phone to ring or engaged any person in

                    telephone conversations repeatedly

§§ 1692e:           Any other false, deceptive, or misleading

                    representation or means in connection with the debt

                    collection

§§ 1692e(4):        Nonpayment of any debt will result in the arrest or

                    imprisonment of any person or the seizure, garnishment,

                    attachment

§§ 1692e(5):        Threaten to take any action that cannot legally be taken or

                    that is not intended to be taken

§§ 1692e(10):       Any false or deceptive means to collect a debt or obtain

                    information about a consumer

§§ 1692f:           Any unfair or unconscionable means to collect or

                    attempt to collect the alleged debt

§§ 1692g:           Failure to send the consumer a 30-day validation notice

                    within five days of the initial communication

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant, Niagra Credit Solutions, Inc. for the following:

a.      Actual damages;

b.      Statutory damages pursuant to 15 U.S.C. § 1692k;

c.      Reasonable attorney's fees and litigation expenses, plus costs of suit; and

d.      Such additional and further relief as may be appropriate or that the interests of justice require.

## COUNT II
## VIOLATIONS OF THE MISSISSIPPI CONSUMER PROTECTION ACT
## MISS. CODE ANN. §§75-24-1, et seq.

44.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

45.     The Defendant employed unfair or deceptive acts to collect the alleged debt, in violation of Miss. Code Ann. §75-24-5(1).

46.     The Defendants failure to comply with these provisions constitutes an unfair or deceptive act under Miss. Code Ann. §75-24-5, and, as such, the Plaintiff is entitled to damages as a result of the Defendant's violations.

## V.  JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.


**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

**Date:  June 13, 2011**

**BY:** /s/

Bruce K. Warren, Esquire
Attorneys for Plaintiff
93 Old York Road
Suite 333
Jenkintown, PA  19046
215-745-9800    Fax 215-745-7880
bkw@w-vlaw.com